Joseph M. Kar (SBN 207414)
**LAW OFFICE OF JOSEPH M. KAR, PC**
15250 Ventura Blvd., Suite PH-1220
Sherman Oaks, CA 91403
Telephone:  (818) 501-6930
Facsimile:   (818) 501-6935

Gerald L. Kroll, Esq. (SBN 066493)
**KROLL LAW FIRM**
970 West Broadway, Ste. E-200
Jackson, WY 83001
Tel:  (202) 248-5423

Attorneys for PLAINTIFFS, LEVI COBOS, individually, and those similarly situated,

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT IN STATE OF CALIFORNIA**

| | |
|---|---|
| **LEVI COBOS**, an individual and those similarly situated,<br><br>    Plaintiff(s),<br><br>  v.<br><br>**ROBINHOOD FINANCIAL LLC**, a business form unknown**;  ROBINHOOD SECURITIES, LLC**, a business form unknown; **ROBINHOOD MARKETS, INC.,** a business form unknown,<br><br>    Defendant(s), | USDC Case No.:<br><br>Class Action and Business & Professions Code § 17200<br><br>**ORIGINAL COMPLAINT FOR:**<br><br>1)  **VIOLATION OF 15 USC § 78i;**<br>2)  **VIOLATION OF 18 USC § 1030 (a);**<br>3)  **VIOLATION OF BUSINESS & PROFESISONS CODE § 17200;** AND,<br>4)  **NEGLIGENCE.** |

## NATURE OF THE ACTION

1.    Robinhood is an online brokerage firm that caters to young and inexperienced investors and investors who typically would not be well prepared to burden financial losses or market manipulations as ordinary or experienced investors.

2.    Robinhood purposefully, willfully, and knowingly manipulated the stock prices of Blackberry (NASDAQ: BB), AMC Theatres (NASDAQ: AMC), and Gamestop (NASDAQ:

GME) and the ability to transact on its trading platform in the midst of an unprecedented stock rise and fall and trading behaviors occurring on January 28, 2021, resulting in the deprivation of its customers and users, retail investors, to invest and transact in an open-market free of manipulation.

## PARTIES

3.     Plaintiff LEVI COBOS is a citizen of the state of California and resides in the County of Los Angeles, at all times relevant.  At all times relevant, Mr. Cobos is and was a customer of Robinhood and was and is a user of the Robinhood app (as defined hereinbelow.)

4.     Defendant Robinhood Financial LLC is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a wholly-owned subsidiary of Robinhood Markets, Inc. Robinhood Financial LLC is registered as a broker-dealer with the U.S. Securities & Exchange Commission ("SEC"). Defendant Robinhood Financial LLC acts as an introducing broker and has a clearing arrangement with its affiliate Defendant Robinhood Securities, LLC.

5.     Defendant Robinhood Securities, LLC is a Delaware corporation with its principal place of business at 500 Colonial Center Parkway, Suite 100, Lake Mary, Florida 32746. It is a wholly owned subsidiary of Defendant Robinhood Markets, Inc. Defendant Robinhood Securities, LLC is registered as a broker-dealer with the SEC. Defendant Robinhood Financial LLC acts as a clearing broker and clears trades introduced by its affiliate Defendant Robinhood Financial.

6.     Defendant Robinhood Markets, Inc. is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. Defendant Robinhood Markets, Inc. is the corporate parent of Defendants Robinhood Financial LLC and Robinhood Securities, LLC.

7.     The above-named corporate defendants herein referred to collectively as "Robinhood."

## JURISDICTION AND VENUE

8.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate claims of all members of the proposed class and

subclass(es) are in excess of $5 million, exclusive of interest and costs, and there are more than 100 putative class members. Many members of the proposed class are citizens of a state different from Defendant.

9.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District where Robinhood, distributed, marketed, advertised, and sold the trading services which are the subject of the present complaint. Finally, venue is appropriate in this District pursuant to 28 USC § 1391(b)(2) because a substantial part of the acts and omissions that gave rise to this Complaint occurred or emanated from this District.

10.      This Court has personal jurisdiction over Robinhood because it is authorized to do business and does conduct business in California, and because it has specifically marketed, advertised, and made substantial sales in California, and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

## FACTUAL ALLEGATIONS

11.      Robinhood is an online brokerage firm that enables its customers to enter into securities transactions (as defined by the Securities and Exchange Act of 1934) and make trades through the Robinhood's computer systems and by using its web-based application (or "app.") Robinhood permits young or inexperienced customers to purchase and sell securities, including futures contracts such as Call or Put options.  The Robinhood further claims over 10 million users use its app.

12.      Because of its marketing and advertising directed to younger audiences and inexperienced potential customers, Robinhood has experienced rapid growth in its businesses since it is a relatively new online brokerage firm. In 2019, Robinhood successfully raised $323 million in funding at a $7.6 billion valuation.  One of those investors in Robinhood, upon information and believe, is Citadel which is a hedge fund that at all time relevant held a short-position in various stocks and derivatives thereof.

13.      On or about March 23, 2016, Robinhood's official Twitter account stated: "Let

the people trade" but on January 28, 2021 Robinson has used its back-end control of its computer systems, trading platform, and its app to selectively block access to transaction or trade services for, *thus far*, Blackberry (NASDAQ: BB), AMC Theatres (NASDAQ: AMC), and Gamestop (NASDAQ: GME), by millions of its own customers who are unable to open, close, or purchase or sell those stocks or derivatives thereof.

14.     Starting sometime in or about mid-January, 2021 and after, stock prices for Gamestop (NASDAQ: GME), AMC Theatres (NASDAQ: AMC), and Blackberry (NASDAQ: BB) began to experience unusual activity due to social media attention surrounding "short selling" activity in at least GME.

15.     At that time, Robinhood did not restrict or interfere with its customers or the retail markets in connection with Gamestop (NASDAQ: GME), AMC Theatres (NASDAQ: AMC), and Blackberry (NASDAQ: BB).

16.     On or about January 27, 2021, Robinhood was publicly criticized in various news publication as one source of trouble in volatility of stock prices Gamestop (NASDAQ: GME), AMC Theatres (NASDAQ: AMC), and Blackberry (NASDAQ: BB), and that Robinhood's participation in the securities exchange markets garnered controversy because of its customer based composition of mostly younger, inexperienced, and easily influenced retail investors.

17.     In an effort to allay criticisms and negative publicity surrounding its business operations, on January 27-28, 2021, Robinhood decided to and did engage in unfair and improper deprivation of computer systems, transaction/trading platform, and services to its customers by disabling the "buy" button on its app; and, Robinhood restricted, limited, or conditioned their ability to transact or trade, abruptly, purposefully, willfully, and knowing or having reason to know that the stock prices for Gamestop (NASDAQ: GME), AMC Theatres (NASDAQ: AMC), Blackberry (NASDAQ: BB), and other securities, would be manipulated and would impact the open market as a result, thus causing harm to its customers, the open market, its fellow broker/dealers and firms, as well as issuers of securities ("Selective Market Manipulation").

18.     Upon information and belief, Robinhood's actions were done purposefully and knowingly to manipulate, or with reason to know, that its customers would be harmed and

without employing any reasonable protections for its retail investor customers affected, even Robinhood knew them to be typically younger or inexperienced and poorer than institutional investors and Robinhood's backers, who were typically rich or wealthy.

19.     Since Robinhood decided to and did engage in the Selective Market Manipulation as alleged herein, the stock prices and derivative market prices for Gamestop (NASDAQ: GME), AMC Theatres (NASDAQ: AMC), Blackberry (NASDAQ: BB), and any others treated the same way on its platform, have been in turmoil, gaining and losing 30-50% or more intraday and Robinhood customers and retail investors, such as LEVI COBOS and those similarly situated, are not freely allowed to either purchase, sell, or trade, their stocks, options, or otherwise open or close positions in derivatives at all on January 28, 2021 and after (as of the date of this complaint), in an open market free from a manipulated stock price in those stocks and derivatives.

20.     Though Robinhood advertises and market's itself and its entities attempt to build upon the old English folklore hero, the Robin the "Hood" or Robin of Lockley, who was know for stealing from the rich to give to the poor, Robinhood and its app have ironically instead stolen from its poor customers to give to the rich.

21.     The Financial Industry Regulatory Authority ("FINRA"), which governs brokers like Robinhood, espouses rule 5310 regarding "Best Execution and Interpositioning." Rule 5310.01 requires that Robinhood "must make every effort to execute a marketable customer order that it receives promptly and fully." By failing to respond at all to customers' placing timely trades—and outright blocking customers from trading a security—Robinhood has breached these, among other, obligations and caused its customers substantial losses due solely to its own negligence and failure to maintain adequate infrastructure.

22.     Also, pursuant to 15 USC § 78i,

(i) Limitations on practices that affect market volatility.

It shall be unlawful for any person, by the use of the mails or any means or instrumentality of interstate commerce or of any facility of any national securities exchange, to use or employ any act or practice in connection with the purchase or sale of any equity security in contravention of such rules or regulations as the Commission may adopt, consistent with the public interest, the protection of investors, and the maintenance of fair and orderly markets—

(1) to prescribe means reasonably designed to prevent manipulation of price levels of the equity securities market or a substantial segment thereof; and

(2) to prohibit or constrain, during periods of extraordinary market volatility, any trading practice in connection with the purchase or sale of equity securities that the Commission determines (A) has previously contributed significantly to extraordinary levels of volatility that have threatened the maintenance of fair and orderly markets; and (B) is reasonably certain to engender such levels of volatility if not prohibited or constrained.

In adopting rules under paragraph (2), the Commission shall, consistent with the purposes of this subsection, minimize the impact on the normal operations of the market and a natural person's freedom to buy or sell any equity security.

23.     As alleged herein, the Selective Market Manipulation by Robinhood is actionable pursuant to 15 USC § 78i(f) and 18 USC §1030 (among other laws, statutes, regulations, and causes of action) and Robinhood, upon information and belief, does and shall continue to engage in the same conduct with other securities to the detriment and harm of Plaintiff, LEVI COBOS, and those similarly situated.

24.     Upon information and belief, Robinhood engaging in such conduct and violations as alleged herein including the Selective Market Manipulation, knowing and having reasonable basis for knowing that its conduct is manipulation of the free open markets and in direct harm to its younger and inexperienced customers and users.

***Plaintiff's Experience***

25.     On the morning on January 28, 2021, Mr. Cobos attempted to transact using the Robinhood app, by "tapping" the "buy" button to purchase additional shares in AMC Theatres (NASDAQ: AMC) but he was denied access, restricted and limited from transacting or trading; which caused him to suffer economic harm due to the abrupt inability to purchase, restrictions and limitations, the Selective Market Manipulation and the volatility Robinhood caused in the open-market by its manipulation.  ("AMC Transaction").  Attached hereto as **Exhibit 1** is a true and correct copy of the screenshot of the AMC Transaction.

26. On the morning on January 28, 2021, Mr. Cobos also attempted to transact using the Robinhood app, by "tapping" the "buy" button to purchase shares in Blackberry

(NASDAQ: BB) but he was denied access, restricted and limited from transacting or trading; which caused him to suffer economic harm due to the abrupt inability to purchase, restrictions and limitations, the Selective Market Manipulation and the volatility Robinhood caused in the open-market by its manipulation.  ("BB Transaction").  Attached hereto as **Exhibit 2** is a true and correct copy of the screenshot of the BB Transaction.

27.     Upon information and belief, there were no computer equipment failures, disruptions, or "glitches" that caused Robinhood to disable the "buy" button, restrict, limit, or deny access to its transaction/trading platform and app, and instead Robinhood deliberately, willfully, and intentionally, used internal controls in its app and computer systems to control the purchase and sale of, transactions in, orders of, and trading in a regulated securities market, to a beholden customer, that Robinhood engaged in without notice to them, knowing and/or having reason to know such actions was market manipulation; and what Robinhood's directors, principals, executives, and/or owners or investors, knew or should have known was market manipulation and misconduct.  Indeed, Robinhood knew it was "gaming" the open markets by controlling the inflow of purchasing and leaving its customers to either sell or hold, while Robinhood violated numerous obligations and duties of trust and confidence that its young and inexperienced customer investors and users, such as Plaintiff LEVI COBOS and those similarly situated, bestowed upon it as a registered and licensed securities broker and trader, and as it marketed itself as "champion" for the poor.

28.     On January 28, 2021, Vladamir Tenev, the chief executive officer of Robinhood, appeared on CNN and publicly stated that Robinhood acted proactively to disable purchases but continued to allow sales, through the "sell" button.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Class, as defined below:

A. MAIN CLASS: All individuals who were Robinhood customers within the United States on January 28, 2021;

B. SUB-CLASS #1: All individuals who were Robinhood customers within the United States who were prevented from transacting in the stock or derivative

of AMC Theatres (NASDAQ: AMC) on January 28, 2021 as a result of Robinhood disabling the "buy" feature on its app; and,

C. SUB-CLASS #2: All individuals who were Robinhood customers within the United States who were prevented from transacting in the stock or derivative of Blackberry (NASDAQ: BB) on January 28, 2021 as a result of the disabling of the "buy" feature on its app.

30.     Excluded from the Class and Sub-Classes are the Robinhood entities and their current employees, counsel for either party, as well as the Court and its personnel presiding over this action, and anyone having a prior judgment or pending in an action which disposes of the instant claims and causes of action.

31.     This action has been brought and may properly be maintained as a class action against Robinhood pursuant to the provisions of Federal Rule of Civil Procedure 23.

32.     **Numerosity**: The precise number of members of the proposed Class is yet unknown to Plaintiff at this time, but, based on information and belief, Class members are so numerous that their individual joinder herein is impracticable.  Based on information and belief and publicly available reports, Class members number in the hundreds of thousands and up to ten million. Subclass members are likely in the tens of thousands. All Class and Subclass members may be notified of the pendency of this action by reference to Robinhood's records, or by other alternative means.

33.     **Commonality**: Numerous questions of law or fact are common to the claims of Plaintiff and members of the proposed Class. These common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common legal and factual questions include, but are not limited to the following:

A.     Whether Robinhood deliberately and/or knowingly disabled the "buy" button on its app and access to a fair and open free market trading platform like every other competitive trading platform;

B.     Whether Robinhood and/or the Selective Market Manipulation, violated 15 USC § 78i;

C.     Whether Robinhood and/or Selective Market Manipulation, violated 18

USC § 1030(a);

D.     Whether Robinhood and/or the Selective Market Manipulation, violated California Business & Professions Code § 17200;

E.     Whether Robinhood breached its contract to provide securities transaction services in good faith and fairly;

F.     Whether Robinhood gave any or sufficient advance notice to its customers of the disabling of the "buy" button;

G.     Whether Robinhood failed to comply with its fiduciary duties and duties of care to their customers;

H.     Whether Robinhood disabled the "buy" button purposefully, for its own advantage, or knowing it would harm their customers and benefit the critics against Robinhood;

I.     Whether Robinhood violated FINRA Rule 5310, among other FINRA rules, state rules, and federal regulations;

J.     Whether Robinhood violated consumer protection laws in failing to disclose that its services would not include the ability to disable trading on its platform unilaterally and place restrictions or limitations without any advance or sufficient notice, as to all securities or derivatives thereof, for any period of time;

K.     Whether Robinhood was in breach of its legal, regulatory, and licensing requirements by failing to provide adequate access to financial services;

L.     Whether Robinhood was in breach of its contracts and/or the implied covenant of good faith and fair dealing in connection with its failure to provide financial services;

M.     Whether Robinhood was negligent or grossly negligent by failing to provide financial services in a timely manner to the detriment of its customers, or for the purpose of allaying its critics;

N.     Whether Robinhood breached its fiduciary duties to customers by failing to provide adequate access to financial services, including without limit, providing adequate advance notice to close out or transfer accounts elsewhere;

O.     Whether Robinhood was unjustly enriched by its conduct;

P.      Whether Plaintiff and the other Class members were injured by Robinhood's conduct, and if so, the appropriate class-wide measure of damages, restitution, and other appropriate relief, including injunctive relief.

Q.      Whether Plaintiff and the other Class members are entitled to injunctive and declaratory relief.

34.     ***Typicality***: The claims of the named Plaintiff are typical of the claims of the proposed Class in that the named Plaintiff was a customer during the class period and was unable to trade and place time-sensitive orders on AMC and BB, and other securities and derivatives thereof which caused damages as a result of Robinhood's wrongful conduct.

35.     ***Adequate Representation***: Plaintiff will fairly and adequately represent the interests of the Class in that he has no conflicts with any other Class members. Plaintiff has retained competent counsel experienced in prosecuting complex class actions and civil litigation, and they will vigorously litigate this class action.

36.     ***No Other Adequate Remedy Beside Class Action***: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. A class action is superior to other available means, if any, for the fair and efficient adjudication of this controversy. Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants. Additionally, given the relatively modest damages sustained by most individual Class members, few, if any, proposed Class members could or would sustain the economic burden of pursuing individual remedies for Robinhood's wrongful conduct. Treatment as a class action will achieve substantial economies of time, effort, and expense, and provide comprehensive and uniform supervision by a single court. This class action presents no material difficulties in management.

37.     Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(A) because the prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which may produce incompatible standards of conduct for Defendants.

38.     Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(B) because the prosecution of separate actions by individual members of the proposed Class

would create a risk of adjudications with respect to individual Class members which may, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

39.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Robinhood has acted or refused to act on grounds generally applicable to all Class members, thereby making final injunctive, declaratory, or equitable relief appropriate with respect to the Class as a whole.

40.     Class action certification is also warranted under Fed. R. Civ P. 23(b)(3) because questions of law or fact common to the Class members predominate over any questions affecting only individual members, and a Class action is superior to other available remedies for the fair and efficient adjudication of this controversy. The amount of damages available to the individual Plaintiff is insufficient to make litigation addressing Robinhood's conduct economically feasible for most in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

41.     Class action certification is also warranted under Fed. R. Civ P. 23(c)(4) because questions of law or fact common to the Class members may be certified and decided by this Court on a class wide basis.

## **FIRST CAUSE OF ACTION**

### [*VIOLATION OF 15 USC § 78i AGAINST ALL DEFENDANTS*]

42.     Plaintiff hereby incorporates each and every allegation set forth herein without duplication.

43.     Defendants, and each of them, as alleged, violated 15 USC § 78i (a), which provides:

> It shall be unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, or for any member of a national securities exchange—…

\*\*\*

(2)    To effect, alone or with 1 or more other persons, a series of transactions in any security registered on a national securities exchange, any security not so registered, or in connection with any security-based swap or security-based swap agreement with respect to such security creating actual or apparent active trading in such security, or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others.

\*\*\*

(6)    To effect either alone or with one or more other persons any series of transactions for the purchase and/or sale of any security other than a government security for the purpose of pegging, fixing, or stabilizing the price of such security in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

44.    In addition, as alleged, Defendants, and each of them, violated 15 USC § 78i (d), which provides:

It shall be unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, or for any member of a national securities exchange to effect, alone or with one or more other persons, a manipulative short sale of any security. The Commission shall issue such other rules as are necessary or appropriate to ensure that the appropriate enforcement options and remedies are available for violations of this subsection in the public interest or for the protection of investors.

45.    Pursuant to 15 USC § 78i(f),

Any person who willfully participates in any act or transaction in violation of subsections (a), (b), or (c) of this section, shall be liable to any person who shall purchase or sell any security at a price which was affected by such act or transaction, and the person so injured may sue in law or in equity in any court of competent jurisdiction to recover the damages sustained as a result of any such act or transaction. In any such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant. Every person who becomes liable to make any payment under this subsection may recover contribution as in cases of contract from any person who, if joined in the original suit, would have been liable to make the same payment. No action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation.

46.    As a proximate and legal result of Defendants, and each of them, and their

violations, Plaintiff, LEVI COBOS, and those similarly situated, were injured and are entitled to damages sustained including, without limit, general and special damages, and reasonable attorneys fees and costs of suit.

47.     The conduct of Defendants, and each of them, was willful, wanton, and done with malice, oppression, and fraud, with such conscious disregard of the rights of Plaintiff, and those similarly situated, and knowing that they are young and inexperienced investors susceptible to substantial injury and financial harm, which Defendants and each of them nevertheless abused and manipulated the Robinhood app to disable vital and important features, knowing such conduct would injure Plaintiff, those similarly situated, and the general public.

## SECOND CAUSE OF ACTION

[*VIOLATION OF 18 USC § 1030(a) AGAINST ALL DEFENDANTS*]

48.     Plaintiff hereby incorporates each and every allegation set forth herein without duplication.

49.     Defendants, and each of them, as alleged, violated 18 USC § 1030 (a), which provides,

Whoever—

(A)     knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

50.     Pursuant to 18 USC § 1030 (g),

Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

51.     As a proximate and legal result of Defendants, and each of them, and their violations, Plaintiff, LEVI COBOS, and those similarly situated, were injured and are entitled to economic damages for violation of subclause (I) of subsection (c)(4)(A)(I).

52.     As a proximate and legal result of Defendants, and each of them, and their violations, Plaintiff, LEVI COBOS, and those similarly situated, are entitled to a preliminary and permanent injunction restraining any further and future violations.

## THIRD CAUSE OF ACTION

[*VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200 AGAINST ALL DEFENDANTS*]

53.     Plaintiff hereby incorporates each and every allegation set forth herein without duplication.

54.     Defendants, and each of them, and their conduct as alleged herein constitute deceptive and unfair business practices in violation of Business & Professions Code § 17200, including, without limit, by (a) disabling the "buy" button on the Robinhood app while enabling the "sell" button operative on any stock or securities transaction; (b) employing the Selective Market Manipulation, (c) failing to notify Plaintiff, and those similarly situated, with sufficient advance notice thereof; and/or (d) engaging in (a), (b), and (c) of this paragraph, in the benefit of Citadel (its investor) and to the detriment of Plaintiff and those similarly situated.

55.     Defendants, and each of them, had actual and constructive knowledge of the conduct alleged herein, and had reasonable time to cure, but failed or refused to do so, nor do they intend to do so.  Unless Defendants, and each of them, are enjoined from engaging in such manners of business practices, they will continue to do so to the detriment and injury of Plaintiff and those similarly situated, and the general public.

56.     As a result of the conduct described above, Defendants, and each of them, have been and will be unjustly enriched at the expense of Plaintiff, those similarly situated, in an amount that is unaccounted for, and which must be ascertained and restored to Plaintiff, those similarly situated in the Class.

57.     As a direct and proximate result of Defendants, and each of them, their conduct and unlawful business practices, as alleged, Plaintiff and those similarly situated

members of the Class suffered actual, general, and special damages in an amount to be proven at trial.

58.     Pursuant to Business & Professions Code §§ 17200-17209, Plaintiff and those similarly situated members of the Class seek an order by this Court disgorging Defendants, and each of them, of their ill-gotten gains, and awarding Plaintiff and those similarly situated members of the Class, and the general public, full restitution of all fees, rents, costs, deposits, profits, benefits, and/or monies wrongfully retained/acquired by Defendants and each of them, by means of such acts of unfair business practices and competition, and interest and attorneys' fees pursuant to, inter alia, Business & Professions § 17200 et. seq., per § 17087, so as to restore any and all monies to Plaintiff and those similarly situated members of the Class, and the general public, which were acquired and obtained by means of such unfair business practices and competition, and which ill-gotten gains are still retained by Defendants and each of them, their affiliates or related entities.  Plaintiff and members of the Class, and the general public, additionally request that such funds be impounded or a constructive trust imposed by the Court or that an asset freeze or trust be imposed upon such revenues, fees, rents, deposits, and profits to avoid dissipation or fraudulent transfers or concealment of such monies by any or all of the Defendants and each of them.  Plaintiff also requests the Court to order an audit and accounting of all monies collected by Defendants and each of them, their affiliates or related entities, during the Settlement Class Period.  Plaintiff and members of the Class, and the general public may be irreparably harmed or denied an effective and complete remedy if such orders are not granted.

59.     Pursuant to Business & Professions Code §§ 17200-17209, Plaintiff seeks an order by this Court ordering Defendants and each of them, to change their practices such that Robinhood is prohibited from disabling one or more of its transaction or trade features on its app unless otherwise ordered to do so by a government agency or court of competent jurisdiction, and restore all such functions forthwith.

## **FOURTH CAUSE OF ACTION**

### [*NEGLIGENCE AGAINST ALL DEFENDANTS*]

60.     Plaintiff hereby incorporates each and every allegation set forth herein without

duplication.

61.     Defendants, and each of them, owed Plaintiff, LEVI COBOS, and those similarly situation, a duty to act prudently and use reasonable care in providing financial services and notifications, and to refrain from acting in a manner which would foreseeably cause any harm.

62.     Defendants, and each of them, also owed a special duty of care to Plaintiff and those similarly situated, not to engage in any acts or inactions that would prioritize Robinhood's and its investors interests, in using the Robinhood app and customer base, over that of Plaintiffs, those similarly situated or that of the general public, which included to refrain from operating its trading platform unequally or by interfering with the ordinary and orderly functioning by disabling one or more "buy" or "sell" feature independently, which Defendants, and each of them, knew or should have known would cause a manipulation of the free open market.

63.     Defendants, and each of them, breached their duties by, among other things, (i) disabling the "buy" feature on the Robinhood app on certain stocks or derivatives, while enabling only the "sell" feature on the same stocks or derivatives; (ii) prioritizing its own interests and that of its investors in connection with transactions on its transaction/trading platform; (iii) failing to notify customers in a timely manner in advance of the disablement and interruption of purchasing features on the Robinhood app.

64.     As a proximate and legal cause of Defendant, and each of them, and their breaches, Plaintiff, and those similarly situated, suffered general and special damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, **LEVI COBOS**, an individual, and those similarly situated members of the Class, pray for judgment as follows:

1.     For General Damages according to proof at trial;

2.     For Special Damages according to proof at trial;

3.     For Pre- and Post Judgment Interest permitted by law;

4.     For Restitution of all amounts wrongfully retained by Defendants and each of them, their affiliates or related entities, including without limit, any premium fees, initiation fees, if applicable, and/or the pro-rata amounts thereof;

5.    For Disgorgement of all their ill-gotten gains and amounts, and reasonable dollar value thereof, wrongfully obtained by Defendants and each of them, including without limit, fees (actually paid or soft-dollar benefits), commissions (inside and outside), interest, profits, proceeds, or income;

6.    For a Constructive Trust, that such funds be impounded or a constructive trust imposed by the court or that an asset freeze or trust be imposed upon such revenues, premiums, benefits, and profits to avoid dissipation or fraudulent transfers or concealment of such monies by any or all of the Defendants.  That audit and accounting of all monies collected by Defendants and each of them, during the Settlement Class Period and be made and reported to the court and Plaintiff;

7.    For a Preliminary and Permanent Injunction ordering Defendants and each of them, to change their practices such that Robinhood is prohibited from disabling one or more of its transaction or trade features on its app unless otherwise ordered to do so by a government agency or court of competent jurisdiction, and restore all such functions forthwith.;

8.    For Civil Penalty Damages not to exceed $2,500.00 for each violation, per Business and Professions Code § 17206.1, all in accordance with proof at trial;

9.    For Treble Damages, per Business and Professions Code § 17082, all in accordance with proof at trial;

10.    For Attorneys Fees per contract, statute or law;

11.    For Costs of this suit herein incurred; and,

12.    For such other and further relief as the court deems just and proper.

Dated: January 28, 2021

Respectfully Submitted,
**LAW OFFICE OF JOSEPH M. KAR, PC**
**KROLL LAW FIRM**

By: _____
Joseph M. Kar
Attorneys for Plaintiff, **LEVI COBOS**, an individual, and on behalf of those similarly situated

///
///

-17-

1

## <u>DEMAND FOR JURY TRIAL</u>

2          Plaintiff hereby demand a trial by jury.

3                                          Respectfully Submitted,
Dated: January 28, 2021          **LAW OFFICE OF JOSEPH M. KAR, PC**
4                                          **KROLL LAW FIRM**

5

6          By: _____
7                              Joseph M. Kar
Attorneys for Plaintiff, **LEVI COBOS**, an individual,
8          and on behalf of those similarly situated

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1



$7.92
AMC

| 1D | 1W | 1M | 3M | 1Y | 5Y |

## Your Position

Shares
250

Market Value
$1,978.78

Avg Cost
$18.75

Portfolio Diversity
11.26%

Today's Return
-$2,996.23 (-60.23%)

**Sell**

Total Return

**Buy**

**Today's Volume**
224,569,227

✕

⚠ You can close out your position in this stock, but you cannot purchase additional shares.

# EXHIBIT 2

7:38

< View BB

# BB $24 Call

## $0.45

▼ $4.58 (91.05%)



1D          1W

**Sell**

**Buy**

Your Position

**BB Share Price**

$15.31

✕

⚠ You can close out your position in this option, but you can't buy additional contracts.

