UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | 2:21-cv-00843-VAP-MRWx | Date | February 10, 2021 |
|---|---|---|---|
| Title | *Levi Cobos v. Robinhood Financial LLC et al.* | | |

Present: The Honorable    VIRGINIA A. PHILLIPS, UNITED STATES DISTRICT JUDGE

| CHRISTINE CHUNG | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings:** MINUTE ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION [DKT. 9] (IN CHAMBERS)

Before the Court is Levi Cobos' ("Plaintiff") Ex Parte Application for a Temporary Restraining Order ("TRO"), and an Order to Show Cause Regarding Preliminary Injunction. (Dkt. 9.) Defendants Robinhood Financial LLC, Robinhood Securities, LLC, and Robinhood Markets, Inc. (collectively, "Robinhood" or "Defendants") filed an Opposition to the Application on February 8, 2021. (Dkt. 27.) Plaintiff filed a Reply on February 9, 2021. (Dkt. 28.)

After considering all the papers filed in support of, and in opposition to, the Application, as well as the arguments advanced at the hearing conducted on February 10, 2021, the Court DENIES the Application.

## I.    Background

On January 29, 2021, Plaintiff filed this class action lawsuit against Defendants after the financial markets experienced unprecedented stock volatility in a select number of securities. (Dkt. 1; Dkt. 27.) Specifically, beginning the week of January 25, 2021, certain stocks, including Blackberry (NASDAQ: BB),

AMC Theatres (NASDAQ: AMC), and Gamestop (NASDAQ: GME) (the "volatile stocks"), experienced extreme levels of volume and rise and falls in market prices.  (*Id.*)  As a result, Robinhood limited its customers' purchase of these securities from January 28, 2021 through February 5, 2021.  (Dkt. 27).

Plaintiff, on behalf of himself and the proposed class, claims Defendants wrongfully limited customer transactions in the volatile stocks, depriving customers of the opportunity to invest in a market free of manipulation.  (Dkt. 1)

On February 3, 2021, Plaintiff filed the instant Ex Parte Application seeking a Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction.  (Dkt. 9).  Specifically, Plaintiff requests that the Court enjoin Defendants from restricting trade on its Application Platform ("Robinhood App" or "App"); he claims this would restore the status quo of trading as it occurred before Robinhood implemented the temporary trade restrictions.  (Dkt. 9).

## II.   Legal Standard

The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction.  *See Reno Air Racing Association, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).  The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction.  *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. June 7, 1995).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  In this Circuit, a plaintiff may obtain a preliminary injunction upon a lesser showing of the merits if the balance of hardships tips "sharply" in his favor, and he has satisfied the other two *Winter* requirements.  *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

"A preliminary injunction is an extraordinary and drastic remedy ...; it is never awarded as of right."  *Munaf v. Green*, 553 U.S. 674, 689-90 (2007) (citations omitted).

## III.   Discussion

As a threshold matter, Plaintiff fails to establish why he seeks relief on an ex parte basis.  Such relief is appropriate only in the face of "real urgency."  *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 194 (C.D. Cal. June 1, 1989).  Both the

Federal Rules of Civil Procedure and the Local Rules of this Court "contemplate that noticed motions should be the rule," because noticed motions "provide a framework for the fair, orderly, and efficient resolution of disputes." (*Id.* at 193). Ex parte applications throw this system "out of whack." (*Id.*)  Accordingly, absent a showing that "bypassing the regular noticed motion procedure is necessary," an ex parte filing is procedurally improper.  *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492–93 (C.D. Cal. Mar. 14, 1995).

To justify ex parte relief, Plaintiff must show (1) his "cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures," and (2) he is "without fault in creating the crisis that requires ex parte relief, or that the crisis occurred [due to] excusable neglect." (*Id.*)  Plaintiff has not discussed, much less established, either of these criteria.

More importantly, Plaintiff has failed to satisfy the requirements set forth in *Winter* for injunctive relief.

## 1.    Likelihood of Success on the Merits

The Court finds that Plaintiff has failed to establish a likelihood of success on the merits.  "Likelihood of success on the merits is 'the most important factor' in determining whether interim, injunctive relief is warranted." *Environmental Protection Information Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020). "Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three *Winter* elements." *Al-Nasser v. Serdy*, No. 220CV03582 ODW (Ex), 2020 WL 3129206, at *2 (C.D. Cal. June 12, 2020).

Plaintiff alleges four claims in the Complaint: (1) Violation of Section 9(a)(2) of the Securities Exchange Act; (2) Violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C.A. § 1030; (3) Violation of California's Business and Professions Code § 17200 ("UCL"); and Negligence.[1]  Plaintiff has not satisfied his burden of showing he is likely to succeed on any of the claims.

### A.    Securities Exchange Act Claim

The Court is not persuaded by Plaintiff's contention that he is likely to prevail on his Securities Exchange Act Claim.  First, Plaintiff is unlikely to establish standing to pursue this claim.  Although Section 9(f) provides a private

---

[1] Plaintiff fails to address his Negligence Cause of Action in the Application.  The Court accordingly only addresses the three causes of Action relied on in the Application.

right of action for violations of Section 9(a), it does so only for persons "who shall purchase or sell any security at a price which was affected by" the alleged violation of Section 9(a). 15 U.S.C. § 78i(f).  "Plaintiff does not allege he bought or sold a security at an inflated or deflated price; rather, he alleges Robinhood prevented him from buying certain securities." (Dkt. 27, at 15).  Moreover, Plaintiff does not dispute that he could have purchased stocks on another platform regardless of any challenges that he may have faced in doing so.

In addition to the standing deficiencies, Plaintiff has failed to show that Robinhood had a specific intent or purpose to induce others to trade in a security; to the contrary, Robinhood prevented the purchases in certain securities.  *See Sec. & Exch. Comm'n v. Wallace*, No. SACV1601788 AG (FFMx), 2017 WL 8230026, at *4 (C.D. Cal. May 8, 2017).  Plaintiff relies heavily on *Onel v. Top Ships, Inc.*, 806 Fed. Appx. 64, 67 (2nd Cir. 2020), which reiterates that manipulation requires some intent to mislead investors.  Plaintiff is unlikely to establish Robinhood's alleged intent to mislead its customers based on the current record before the Court; indeed, Plaintiff fails to rebut Robinhood's disclosure that it was halting purchases of the volatile securities.

### B.  CFAA Claim

Plaintiff also has failed to show a likelihood of success on the CFAA claim.  The CFAA is a criminal statute that prohibits certain computer crimes.  *See* 18 U.S.C. § 1030 *et seq.*  Here, Plaintiff alleges Defendants violated Section 1030(a) which holds liable "whoever knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer."  18 U.S.C. § 1030 (a).

As Defendants note, Plaintiff has not set forth a cognizable allegation of "transmission."  Unlike the single case Plaintiff relies on, where the defendant created a malware program that directly infected a network of computers, Defendants' restrictions were made on the Robinhood App as opposed to Plaintiff's cellular device.  *United States v. Raisley*, 466 Fed. Appx. 125 (3rd Cir. 2012) (cert. denied, 568 U.S. 862, 133 S. Ct. 216, 184 L. Ed. 2d 111, 127 (2012).

Moreover, as Defendants point out, to the extent there was a "transmission" onto Plaintiff's device, such transmission was authorized by Plaintiff in the Customer Agreement.  (Dkt. 27-1, Ex. D., ¶ 16).  Hence, Plaintiff has failed to establish a likelihood of success on this claim.

### C.   Business and Professions Code

With respect to the third claim, a Violation of California's Business and Professions Code Section 17200, Plaintiff's allegations are also unpersuasive. As Plaintiff acknowledges in his papers, the unlawful prong of "Section 17200 'borrows' violations of other laws and makes them actionable as unlawful business practices."  (Dkt. 9, at 17 *citing State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1102 (1996)).  As noted above, the Court finds that Plaintiff is unlikely to succeed on the first two causes of action; the UCL claim thus fails to the extent it relies on those claims.

Plaintiff also lists various SEC Guidelines that Robinhood's temporary restrictions allegedly violated.  (*See* Dkt. 28, at 6-7).  None of these guidelines support Plaintiff's argument and none prohibit Robinhood from disabling the buy feature for certain volatile stocks on its App.  Indeed, 17 CFR § 240.15c3-5 (c), consists of risk management control guidelines to help curb a broker or dealer's risks in the market.  These guidelines acknowledge that a broker may reject qualifying orders under certain circumstances, but do not limit the circumstances whereby orders can be rejected (or prevented) contrary to Plaintiff's theory.  17 CFR § 240.15c3-5 (c)(ii).

It is not clear whether Plaintiff is attempting also to allege claims under the unfair and fraudulent prongs of the UCL.  In any event, as Defendants point out, the UCL requires that Plaintiff suffer an economic injury.  *Singh v. Google LLC*, No. 16-CV-03734-BLF, 2018 WL 984854, at *3 (N.D. Cal. Feb. 20, 2018) (citations omitted).  Plaintiff has not alleged such economic injury and is unlikely to establish one, given that he was only prevented from purchasing desired stocks and any alleged profits he would have made are speculative.  Thus, Plaintiff has failed to establish a likelihood of success on this claim.

Likelihood of success on the merits is a threshold inquiry. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).  As Plaintiff has failed to establish he is likely to succeed or to raise serious questions regarding the merits of any claim, the Court "need not consider the remaining three *Winter* elements."  (*Id.*)  Plaintiff has not established he is entitled to the injunction he seeks.

### 2.   Irreparable Harm

Although it need not address this factor, the Court notes that Plaintiff also has failed to show the need for emergency injunctive relief to prevent immediate and irreparable harm.  "An essential prerequisite to the granting of a [temporary restraining order] is a showing of irreparable injury to the moving party in its

absence." *Dollar Rent A Car of Washington, Inc. v. Travelers Indem. Co.*, 774 F.2d 1371, 1375 (9th Cir. 1985).

Plaintiff's alleged irreparable harm, although not clearly pled, appears to be based on an unpredictable interference with his ability to purchase certain stocks on the Robinhood App. (Dkt. 9, at 10-11). As Robinhood notes, this harm is speculative; Plaintiff has not provided any evidence to suggest that such interference would happen again, when it might happen, or whether Plaintiff would be affected by such interference. Moreover, as Plaintiff acknowledges, he can always elect to purchase his desired stocks on other platforms and thus avoid any interferences on the Robinhood App. (Dkt. 9, at 11). In addition, Robinhood has restored full functionality on its App as of February 5, 2021, further thwarting any alleged immediate harm suffered by Plaintiff. (Dkt. 27-3, ¶ 32).

Plaintiff has also failed to convince the Court that his alleged damages are anything but monetary. *Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1073 (9th Cir. 2014) ("monetary injury is not normally considered irreparable.") (citations omitted). Even if the Court gave credence to Plaintiff's argument that Robinhood is killing the "spirit of the customer base" because the "youth and inexperienced investors … cannot buy certain stocks", this alleged injury would be remedied by damages.

## IV.    Conclusion

For the foregoing reasons, the Court finds that Plaintiff has not satisfied the heavy burden of establishing he is entitled to the extraordinary remedy of a temporary restraining order. Accordingly, the Court DENIES Plaintiff's Application.

**IT IS SO ORDERED.**